### NORTHLAND CRANBERRIES, INC. and Clermont, Inc., Plaintiffs,

v.

### OCEAN SPRAY CRANBERRIES, INC., Defendant.

No. CIV.A. 03–10734–JLT.

United States District Court, D. Massachusetts.

June 10, 2004.

---

Alan M. Wiseman, Edward P. Henneberry, Patrick Todd Mullins, Stephen Weissman, Ari N. Rothman, Hillary L. Snyder, Mark C. Schechter, Vincent E. Verrocchio, Howrey Simon Arnold & White, LLP, J. Douglas Baldridge, Venable LLP, Washington, DC, Vincent P. Cahalane, Law Offices of Vincent P. Cahalane, P.C., Brockton, MA, Douglas S. Morrin, Bingham McCutchen LLP, Boston, MA, for Plaintiffs.

Donald M. Barnes, Jennifer J. Illingworth, Salvatore A. Romano, Porter, Wright, Morris & Arthur, Washington, DC, James C. Burling, Michelle D. Miller, Peter A. Spaeth, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, David S. Eggert, James L. Cooper, Robert Mascola, William Baer, Arnold & Porter, for Defendant.

### ORDER

TAURO, District Judge.

This court hereby APPROVES and ADOPTS the *Special Master's Recommendation on Cross–Motions for Partial Summary Judgment Concerning Capper–Volstead Act and Foreign Membership in Ocean Spray's Agricultural Cooperative* [# 152].

IT IS SO ORDERED.

### SPECIAL MASTER'S RECOMMENDATION ON CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT CONCERNING CAPPER–VOLSTEAD ACT AND FOREIGN MEMBERSHIP IN OCEAN SPRAY'S AGRICULTURAL COOPERATIVE

Upon consideration of the plaintiffs' Motion for Summary Judgment on the Inapplicability of the Capper–Volstead Act to the Antitrust Allegations of the Complaint and Ocean Spray's Cross–Motion for Partial Summary Judgment Regarding Capper–Volstead Applicability, the Special Master recommends that the Court *DENY* the plaintiffs' Motion. The Special Master recommends that the Court *ALLOW* Ocean Spray's Cross–Motion to the extent that Ocean Spray seeks a determination that the inclusion of foreign members in its agricultural cooperative does not prevent Ocean Spray from asserting the antitrust exemption set forth in the Capper–Volstead Act, 7 U.S.C. § 291, *et seq.* as an affirmative defense to the Amended Complaint.

Ocean Spray has not expressly moved for summary judgment as to the effect of the Capper–Volstead Act on any of the plaintiffs' claims against Ocean Spray. Therefore, the Special Master makes no recommendation on that issue.

### The Nature of the Case

This is an antitrust case brought by a current independent seller of cranberry products (Northland Cranberries, Inc.) and a former independent seller of cranberry products (Clermont, Inc.) against Ocean Spray Cranberries, Inc. Ocean Spray is an agricultural cooperative of cranberry growers. The plaintiffs allege that the agreements between Ocean Spray and its members constitute unlawful restraints on competition, and that Ocean Spray has engaged in unlawful, anticompetitive activities "that have harmed, and continue to harm, competition for the sale of cranberry products in the United States." (Amended Complaint, ¶ 1).

As its Second Defense, Ocean Spray alleges that it is "an association of agricul-

tural producers who collectively process, prepare for market, handle and market in interstate and foreign commerce their agricultural products, and thus the plaintiffs' claims are barred in whole or in part by various statutory exemptions for agricultural cooperatives and associations of producers including, but not limited to, the Capper–Volstead Act, 7 U.S.C. § 291, *et seq.;* the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. § 601, *et seq.;* and the Cooperative Marketing Act of 1926, 7 U.S.C. § 451, *et seq.*"

The plaintiffs allege that Ocean Spray is not entitled to claim immunity under the Capper–Volstead Act, because Ocean Spray's members include cranberry growers outside of the United States. The plaintiffs argue that in order for Ocean Spray to claim immunity under the Capper–Volstead Act, all of its members must be growers in the United States.

The issue presented is an issue of first impression. No court has addressed the question of whether the term "persons" in the Capper–Volstead Act includes foreign farmers.

### The Undisputed Material Facts

Ocean Spray is a Delaware corporation with its principal place of business in Massachusetts. (Pls' Statement of Undisputed Facts, No. 3, admitted by Ocean Spray; Amended Complaint and Answer thereto, ¶ 16.) Ocean Spray is an agricultural cooperative whose members include 800 cranberry growers. (Pls' Statement of Undisputed Facts, No. 3, admitted by

Ocean Spray.) Approximately 75 to 100 of Ocean Spray's members are located outside of the United States. (Pls' Statement of Undisputed Facts, Nos. 3 and 4, admitted by Ocean Spray).[1] The plaintiffs do not allege that any of the foreign members are not cranberry producers; it is undisputed for purposes of summary judgment that all of the foreign members are cranberry producers.

### The Special Master's Ruling

Section 291 of the Capper–Volstead Act (7 U.S.C. § 291) provides as follows:

Persons engaged in the production of agricultural products as farmers, planters, ranchmen, dairymen, nut or fruit growers may act together in associations, corporate or otherwise, with or without capital stock, in collectively processing, preparing for market, handling, and marketing in interstate and foreign commerce, such products of persons so engaged. Such associations may have marketing agencies in common; and such associations and their members may make the necessary contracts and agreements to effect such purposes: *Provided, however,* That such associations are operated for the mutual benefit of the members thereof, as such producers, and conform to one or both of the following requirements:

**First.** That no member of the association is allowed more than one vote because of the amount of stock or membership capital he may own therein, or,

---

1. The parties dispute the amount of cranberries delivered to Ocean Spray by growers outside of the United States. The Plaintiffs claim that Ocean Spray's Canadian members contribute approximately 20% of Ocean Spray's total cranberry production. (Pls' Statement of Undisputed Facts, No. 5.) Ocean Spray claims that as of August, 2003 approximately 16% of Ocean Spray's total cranberry

acreage was located outside the United States and that approximately 17% of the total cranberries delivered to Ocean Spray in the 2002 harvest consisted of cranberries grown outside of the United States. (Ocean Spray's Statement of Undisputed Facts, No. 5.) This dispute is immaterial to the cross-motions for partial summary judgment.

**Second.** That the association does not pay dividends on stock or membership capital in excess of 8 per centum per annum.

And in any case to the following:

**Third.** That the association shall not deal in the products of nonmembers to an amount greater in value than such as are handled by it for members.

Section 292 of the Act authorizes the Secretary of Agriculture to take action against an agricultural cooperative that "monopolizes or restrains trade in interstate or foreign commerce to such an extent that the price of any agricultural product is unduly enhanced[.]" 7 U.S.C. § 292.

■ "When statutory interpretation is at issue, the plain and unambiguous meaning of a statute prevails in the absence of clearly expressed legislative intent to the contrary." *In re Alappat*, 33 F.3d 1526, 1531 (Fed.Cir.1994) (*citing Mansell v. Mansell*, 490 U.S. 581, 592, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989)). The Capper–Volstead Act is plain and unambiguous in its reference to "persons." No limitation on the ordinary meaning of that word is stated or implied. The term "persons" refers to foreign farmers as well as American farmers.

The conclusion that "persons" includes foreign farmers is confirmed by Congress' purpose in adopting the Capper–Volstead Act. As discussed below, Congress adopted the Capper–Volstead Act (in 1922) in order to extend to agricultural cooperatives having capital stock the exemption from the antitrust laws that Congress had granted (in 1914) to agricultural cooperatives not having capital stock, in Section 6 of the Clayton Act. *See Case–Swayne Co. v. Sunkist Growers, Inc.*, 389 U.S. 384, 390–391, 88 S.Ct. 528, 19 L.Ed.2d 621 (1967). As discussed below, under the Clayton Act,

"persons" is expressly defined as including foreign entities. 15 U.S.C. § 12.

Section 6 of the Clayton Act—which opens with the statement that "[t]he labor of a human being is not a commodity or article of commerce"—provides that the antitrust laws are not to be "construed to forbid the existence and operation of labor, agricultural, or horticultural organizations, instituted for the purposes of mutual help, and not having capital stock or conducted for profit[.]" 15 U.S.C. § 17.

According to the United States Supreme Court, "From the standpoint of agricultural cooperatives, the principal defect in that exemption was that it applied only to nonstock organizations." *Case–Swayne Co.*, 389 U.S. at 391, 88 S.Ct. 528. The Capper–Volstead Act was therefore adopted "to clarify the exemption for agricultural organizations and to extend it to cooperatives having capital stock." *Id. See also Maryland & Virginia Milk Producers Ass'n. v. United States*, 362 U.S. 458, 464–468, 80 S.Ct. 847, 4 L.Ed.2d 880 (1960) (discussing the history and purpose of the Capper–Volstead Act at length).

Section 1 of the Clayton Act defines " 'person' and 'persons' wherever used in this Act" as including "corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, *or the laws of any foreign country.*" 15 U.S.C. § 12 (emphasis added). The Sherman Act defines "person" and "persons" in the same way. 15 U.S.C. § 7.

The Special Master concludes that the meaning of the term "persons" under the Capper Volstead Act is as broad as the definition set forth in the Clayton Act. A review of the Clayton Act as a whole demonstrates that the exemption contained in Section 6 of the Clayton Act applies to cooperatives that include foreign farmers;

likewise, the Capper–Volstead Act applies to cooperatives that include foreign farmers. *See New Hampshire v. Ramsey*, 366 F.3d 1, 26 (1st Cir.2004) ("[w]here Congress uses the same term in the same way in two statutes with closely related goals, basic canons of statutory construction suggest a presumption that Congress intended the term to have the same meaning in both contexts").[2]

The plaintiffs offer several arguments for the proposition that, notwithstanding the plain meaning of the word "persons," and notwithstanding the fact that the Capper–Volstead Act was enacted to clarify and extend the exemption set forth in Section 6 of the Clayton Act, the term "persons" as used in the Capper–Volstead Act does not have the same meaning as the term "persons" as used in the Clayton Act. The Special Master is not persuaded by those arguments.

For example, the plaintiffs cite the statement in *National Broiler Marketing Ass'n v. United States*, 436 U.S. 816, 822, 98 S.Ct. 2122, 56 L.Ed.2d 728 (1978) that in order for the cooperative in that case (concerned with the production of broiler chickens) to enjoy protection under the Capper–Volstead Act, "*all* its members must be qualified to act collectively" (emphasis in original). As a review of that case makes clear, however, the statement simply means that all of the members of a cooperative claiming immunity under the Capper–Volstead Act must be "engaged in the production of agricultural products." 7 U.S.C. § 291. The cooperative in that case was not entitled to immunity because its membership included persons who were not "engaged in the production of agricul-

tural products," i.e., persons who did not own a breeder flock or hatchery and did not maintain any facility for raising chickens. *National Broiler Marketing*, 436 U.S. at 822, 98 S.Ct. 2122. Nothing in that case suggests that foreign persons who are "engaged in the production of agricultural products" are not "qualified to act collectively" under the Capper–Volstead Act.

■ The plaintiffs also cite the rule that exemptions to the antitrust laws should be narrowly construed. *See, e.g., Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 231, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). Application of that rule does not, however, support the plaintiffs' proposed limitation on the meaning of "persons": the rule neither requires nor permits a court to disregard the plain language of the statute when interpreting an exemption. Courts have repeatedly rejected proposed narrow interpretations of statutory exemptions from the antitrust laws where those interpretations are inconsistent with the plain language of the statute. *See, e.g., United States v. Tucor Int'l, Inc.*, 189 F.3d 834, 837 (9th Cir.1999) (rejecting the government's proposed construction of the antitrust exemption in the Shipping Act of 1984 as applying only to "ocean common carriers": "[t]he government's construction ignores the Act's plain language and cannot be interpreted consistently with the statute as a whole"); *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1319 (3rd Cir.1992) (refusing to limit the term "associations" contained in the Webb–Pomerene Act (an antitrust exemption applicable to export associations) to associations of American-owned firms);

---

**2.** Plaintiffs cite various statements made in the legislative debates which they claim demonstrate that Congress intended to exclude foreign farmers from the definition of "persons." None of the statements support the

plaintiffs' position. At most, the statements show that certain legislators argued that foreign competition was likely to prevent exempt agricultural cooperatives from achieving a monopoly position.

*Treasure Valley Potato Bargaining Ass'n v. Ore–Ida Foods, Inc.,* 497 F.2d 203, 214–215 (9th Cir.1974) (interpreting the term "marketing" in the Capper–Volstead Act and rejecting a proposed interpretation of the term that would limit it to the "sale" of agricultural products).

▪ In a related vein, the plaintiffs argue that the Court should conclude that "persons" under the Capper–Volstead Act does not include foreign persons, because in another statutory exemption, the Fisherman's Collective Marketing Act (the "FCMA"), Congress included a territorial limitation in the definition of "aquatic products." 15 U.S.C. § 521. (The statute defines "aquatic products" as "all commercial products of aquatic life in both fresh and salt water, as carried on in the several States, the District of Columbia, the several Territories of the United States, the insular possessions, or other places under the jurisdiction of the United States.") While it is true that the Capper–Volstead Act is similar to the FCMA in several respects, it differs in a significant respect: Congress did not define "agricultural products" as referring only to products grown in the United States or in places under the jurisdiction of the United States. When one statute contains limiting language and a related statute does not, the court should presume that the difference was intentional. *Compare B.F.P. v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) ("[i]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another").

▪ In arguing that "persons" as used in the Capper–Volstead Act does not include foreign farmers, the plaintiffs also cite the presumption against extraterritori-al application of United States law. Under this presumption, courts presume that federal legislation is "primarily concerned with domestic conditions," absent a clear expression of congressional intent to the contrary. *See EEOC v. Arabian American Oil Co.,* 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (internal citation and quotation marks omitted) (holding that the protections of Title VII did not apply to United States citizens employed by American employers outside of the United States).[3] The presumption "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Id.*

▪ The plaintiffs' reliance on this presumption is misplaced. First, there is no question that the federal antitrust laws apply to conduct outside of the territorial borders of the United States when that conduct affects competition within the United States. *See, e.g., Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 796, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) ("[i]t is well established by now that the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States"). To the extent that the instant case involves extraterritorial application of the antitrust laws, the plaintiffs themselves allege that the conduct at issue has had a substantial effect within the United States. (Amended Complaint, ¶ 1.)

▪ Furthermore, the rationale for the presumption is inapplicable where the statute at issue is an *exemption* from United States law rather than a *statute imposing requirements or standards of conduct* on persons in other countries. By its very nature, an exemption from a prescriptive law of the United States eliminates any

---

**3.** This holding was superseded by statute. 42 U.S.C. § 2000e(f) (2000).

conflict between that prescriptive law and the law of another country. The Capper–Volstead Act in no way impedes the ability of another sovereign to forbid its citizens to engage in conduct that is permissible under the laws of the United States. *Compare Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 799, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (rejecting the argument of London reinsurers that the application of federal antitrust law to their conduct would conflict with British law: "[t]he London reinsurers do not argue that British law requires them to act in some fashion prohibited by the law of the United States, ... or claim that their compliance with the laws of both countries is otherwise impossible") (internal citation omitted).

The plaintiffs also claim that the United States Department of Justice (the "DOJ") has taken the position in certain antitrust actions that the Capper–Volstead Act does not apply to agricultural cooperatives that include foreign members, and that the Court should defer to the DOJ's interpretation of the statute. Both Ocean Spray and the National Council of Farmer Cooperatives, *amicus curiae,* counter that the United States Department of Agriculture (the "USDA") has issued numerous publications stating that Capper–Volstead immunity extends to cooperatives with foreign members and that American farmers can realize substantial economic benefits by associating with foreign farmers (for example, an extended growing season).[4]

■ Ocean Spray also counters that the plaintiffs have misinterpreted the DOJ's statements; that statements by the DOJ in the context of litigation are not entitled to deference; and that the USDA's position, rather than the DOJ's position, is entitled to deference. The Special Master does not address these issues, because the question of whether a court should defer to an agency's interpretation of a statute only arises where the statute is ambiguous. *See Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress"). The Special Master has concluded that the term "persons" in the Capper–Volstead Act unambiguously refers to foreign farmers as well as American farmers.

The plaintiffs also argue that the conclusion that "persons" includes foreign farmers would lead to "absurd results." (Pls' Memo at 19.) The plaintiffs argue that this interpretation would "permit producers throughout the world to cartelize any agricultural commodity," to the detriment of American consumers. (Pls' Memo at 19.) The plaintiffs further argue that a ruling by the Court that "persons" includes foreign farmers "would provide a huge incentive and cause non-cooperative agricultural entities to restructure into cooperatives so that they could fit within the Act's protection of price fixing." (Pls' Memo at 20). Ocean Spray counters that the scenario described by the plaintiffs has not come to pass notwithstanding the fact that the USDA has, for the past several

---

4. *See, e.g.,* James A. Jacobs, *Fruit and Vegetable Cooperatives,* Farmer Cooperatives in the United States, Cooperative Information Report 1, Section 13, United States Department of Agriculture, Agricultural Cooperative Service, issued September 1978, revised November 1990, p. 59 (Appendix in Support of Ocean Spray's Memorandum ("Ocean Spray's Appendix"), Ex. 10); Tracey L. Kennedy and Karen J. Spatz, "Over There: Cooperatives Going Global to Enhance Marketing Position," *Farmer Cooperatives* (USDA: October 1993), pp. 14–15 (Ocean Spray's Appendix, Ex. 18); *Cooperatives in International Trade,* p. 6 (USDA: April 1997) (Ocean Spray's Appendix, Ex. 14, p. OCS 0173A–0287).

years, encouraged agricultural cooperatives in the United States to add foreign members. (*See* publications cited in note 4 *infra.*)

The plaintiffs' argument does not persuade the Special Master that he can or should disregard the plain meaning of the word "persons." Congress has expressly built a safeguard for American consumers into the statute, by authorizing the Secretary of Agriculture to bring proceedings against any cooperative that "monopolizes or restrains trade in interstate *or foreign commerce* to such an extent that the price of any agricultural product is unduly enhanced by reason thereof[.]" 7 U.S.C. § 292 (emphasis added).

For the reasons stated above, the Special Master the recommends that the Court **DENY** the plaintiffs' Motion for Summary Judgment on the Inapplicability of the Capper–Volstead Act to the Antitrust Allegations of the Complaint. The Special Master recommends that the Court **ALLOW** Ocean Spray's Cross–Motion to the extent that Ocean Spray seeks a determination that the inclusion of foreign members in its agricultural cooperative does not prevent Ocean Spray from asserting the antitrust exemption set forth in the Capper–Volstead Act, 7 U.S.C. § 291, *et seq.* as an affirmative defense to the Amended Complaint.

May 19, 2004.